```
IN THE UNITED STATES DISTRICT COURT
  FOR THE SOUTHERN DISTRICT OF ALABAMA
            SOUTHERN DIVISION
```

| | |
|---|---|
| **GEORGE E. SEYMOUR, JR.,** \*  | |
| \* | |
| **Plaintiff,** \* | |
| \* | |
| **vs.** \* | **CIVIL ACTION NO. 17-00537-B** |
| \* | |
| **NANCY BERRYHILL,** \* | |
| **Acting Commissioner of Social** \* | |
| **Security,** \* | |
| \* | |
| **Defendant.** \* | |

## <u>ORDER</u>

Plaintiff George E. Seymour, Jr. (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On October 12, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 12). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I. **Procedural History**[1]

Plaintiff filed his application for benefits on June 16, 2015, alleging disability beginning September 10, 2009, based on diabetes, neuropathy, and spinal stenosis. (Doc. 8 at 182, 194, 207). Plaintiff last met insured status on December 31, 2013. (Id. at 23). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Robert Waller (hereinafter "ALJ") on November 21, 2016. (Id. at 73). Plaintiff attended the hearing with his attorney and provided testimony related to his claims. (Id. at 77). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 108). On February 8, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 21). The Appeals Council denied Plaintiff's request for review on October 26, 2017. (Id. at 6). Therefore, the ALJ's decision dated February 8, 2017, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on November 16, 2018. (Doc. 15). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

**II. Issue on Appeal**

> **Whether substantial evidence supports the Residual Functional Capacity ("RFC") for a range of sedentary work with the stated restrictions?**

**III. Factual Background**

Plaintiff was born on October 10, 1971, and was forty-five years of age at the time of his administrative hearing on November 21, 2016. (Doc. 8 at 77, 194). Plaintiff graduated from Auburn University with a degree in Health and Human Performance. (Id. at 78-79).

Plaintiff last worked from 2006 to 2009 as a substitute teacher. (Id. at 79). Prior to that, from 2002 to 2006, he was employed as a pizza restaurant worker and from 1995 to 2002 as an assistant manager at a pizza restaurant. (Id. at 80-82).

Plaintiff testified that he can no longer work because of problems with his heart, back, diabetes, and high blood pressure. (Id. at 83-85). Plaintiff testified that he had surgery on his back in 2009, and this significantly alleviated his back pain and eliminated the need for a walker. (Id. at 85-88). Plaintiff also had heart problems in 2009, which steadily improved with medication and exercise. (Id. at 88-89). From 2009 to 2013, Plaintiff's diabetes was managed with medication; however, in 2014, some of his toes had to be amputated because of non-healing diabetic ulcers. (Id. at 91-92). Plaintiff testified that it was hard for him to

3

wear shoes, and he got fatigued easily. (Id. at 100-01). However, Plaintiff also testified that, during the period in question, he exercised and walked about a mile, four or five days a week. (Id. at 89, 103-04).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.     Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed

5

to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI. Discussion**

    **A. Substantial evidence supports the Residual Functional Capacity ("RFC") for a range of sedentary work with the stated restrictions.**

In his brief, Plaintiff argues that the ALJ's finding that he

6

can perform a range of sedentary work is not supported by substantial evidence, "as it misrepresents the Plaintiff's testimony regarding his activities of daily living and does not account for records that support Plaintiff's testimony of chronic fatigue and flares." (Doc. 9 at 2). Specifically, Plaintiff states that "[w]hile [he] did testify that he could perform some of activities listed by the ALJ, a full reading of the written transcript shows that Plaintiff acknowledged that he didn't always tell his doctors about his flares and instead focused on how he was feeling on his positive days." (Id. at 3). The Government counters that the ALJ expressly considered Plaintiff's impairments, as well as Plaintiff's testimony and reports to his treating physicians about his wide range of activities, and that the RFC is fully supported by the substantial evidence. (Doc. 10 at 3). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440

7

(11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

In the instant case, the ALJ found that Plaintiff has the severe impairments of congestive heart failure, diabetes mellitus, neuropathy, obesity, degenerative changes in the back, status post laminectomy, and hypertension. (Doc. 8 at 23). The ALJ also determined that Plaintiff has the RFC to perform a range of sedentary work with the following restrictions: Plaintiff can lift/carry 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours; stand for 2 hours; walk for 2 hours; push/pull as much as can lift/carry; never climb ladders, ropes, or scaffolds; climb ramps and stairs, balance, stoop, kneel, crouch and crawl occasionally; never be exposed to unprotected heights or moving mechanical parts; and have occasional exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold and extreme heat. (Id. at 24). Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff is not able to perform his past relevant work, but he can perform other work such as front desk receptionist, data entry clerk, and telemarketer, all

sedentary and semi-skilled. (Id. at 34-35). Thus, the ALJ found that Plaintiff is not disabled. Having reviewed the evidence at length, the Court is satisfied that the ALJ's RFC is supported by substantial evidence.

As noted, Plaintiff's last date insured is December 31, 2013. (Doc. 8 at 23). As the ALJ found, Plaintiff's treatment records show that he was treated from 2009 to 2016 for various ailments including back pain, diabetes, neuropathy, spinal stenosis, hypertension, and congestive heart failure. (Id. at 271-72, 407-17, 501-08, 840-931). At his hearing, Plaintiff testified that, following a successful laminectomy procedure on his back in 2009, he no longer needed a walker, and his back pain was reduced to a two on a ten-point pain scale, although he occasionally experienced flare ups.[3] (Id. at 85-87, 95-96, 271-72, 417). Plaintiff further testified that his heart condition improved with medication, although he still experienced occasional fatigue and shortness of breath. (Id. at 88, 409, 501, 521, 834). Plaintiff also testified that his diabetes was manageable, although he experienced ulcers on his feet from 2009 to 2014. (Id. at 91-93, 106). According to Plaintiff, he experienced worsening diabetic symptoms in March 2014, eventually resulting in the amputation of several of his toes.

---

[3] An MRI taken on November 24, 2009, after Plaintiff's back surgery, showed only mild degenerative changes of the thoracic spine. (Doc. 8 at 414).

9

However, Plaintiff acknowledges that his toe amputations occurred after the date he was last insured (December 31, 2013). (Doc. 9 at 4 n.1; Doc. 8 at 938, 941, 1235, 1312, 1329, 1337-43).

As the ALJ found, with the exception of Plaintiff's back surgery in 2009, his treatment records reflect conservative treatment of his medical conditions with medication, diet, and exercise, resulting in adequate control of symptoms. (Id. at 271-72, 407-10, 417, 501-25, 702-20, 751-68, 840-71). Indeed, Plaintiff's medical records reflect largely normal physical examination findings, including notations that he was "doing very, very well;" "back pain has essentially resolved;" "no back pain;"[4] no chest pain; no tenderness; no headache; no shortness of breath; no chest pain; doing remarkably well; no acute distress; "neurologically normal;" no swelling in extremities; normal lungs; normal range of motion; normal strength; normal gait and coordination; no joint pain; no muscle weakness; and normal sensory and motor function. (Id. at 408-10, 504-25, 834, 840-71, 1288).

Specifically, with respect to Plaintiff's heart condition, his medical records reflect that he was hospitalized in October 2009 for heart failure and edema (id. at 354), after which he was treated by Dr. Brian Wood, M.D., from 2009 to 2014 for cardiomyopathy,

---

[4] Following Plaintiff's laminectomy back surgery in September 2009, his surgeon, Dr. Folarin Olubowale, repeatedly noted that he was doing "remarkably well" and experiencing no back pain whatsoever. (Doc. 8 at 408-10).

10

congestive heart failure, diabetes, fatigue, and ulcers on his feet. Dr. Wood's treatment plan consisted of medication, diet, and exercise, and his notes reflect that Plaintiff was improving and feeling better with treatment. (Id. at 516-25, 544-77, 834-926). In addition, Dr. Wood's examination findings reflect normal gait, normal range of motion, and normal strength, with no motor or sensory deficits, no swelling in extremities, no chest pain, healed ulcers on feet, normal cardiovascular exam, no shortness of breath, no joint pain, and no muscle weakness. (Id. at 501-23, 544-77, 834, 840-914, 1271). In May 2010, Dr. Wood noted that Plaintiff "says he pushed his lawn mower recently for 35 minutes with no symptoms." (Id. at 513). In November 2010, Dr. Wood noted that Plaintiff reported going to a college football game "without shortness of breath or chest pain." (Id. at 506). Dr. Wood also noted that Plaintiff's diabetes was improving. In October 2012 and April 2013, Dr. Wood advised Plaintiff that his lab work showed that his liver, sugar, thyroid, anemia screens, and diabetes markers were "fantastic," and the good report continued in October 2013. (Id. at 836, 845, 852).

In December 2011, Plaintiff was also treated by a cardiologist, Dr. Michael Williams, M.D., who noted that Plaintiff was "doing well," that he was compliant with his medications, that he was having no chest pain or shortness of breath, that he was exercising, that the was "feel[ing] good," and that his echocardiogram and

examination showed that he was "stable." (Id. at 762). Another treating cardiologist, Dr. Patricia Wade, M.D., noted in January 2013 that Plaintiff was able to do yard work and was "not limited at all by his breathing," and in July 2013, Plaintiff reported that he was exercising four or five times a week for up to a mile at a time. (Id. at 702, 751). Plaintiff's physical examinations again were largely normal. (Id. at 702, 717-19, 751-56, 762).

With respect to Plaintiff's hypertension and diabetes, his treating physicians similarly prescribed medication, as well as diet and exercise. (Id. at 501-25, 703, 828-44, 1271). While Plaintiff argues in his brief that these conditions were poorly controlled, he testified at his hearing that his diabetes was manageable (id. at 91-92) and did not testify to any limitations resulting from his hypertension. (Id.). Further, with respect to Plaintiff's diabetic foot ulcers, the record shows that Plaintiff's treating physician, Dr. Wade, prescribed antibiotics on January 7, 2013, which resulted in healing.[5] (Id. at 702).

Notably, despite each of Plaintiff's impairments, the record shows that Plaintiff maintained a wide range of activities, including: driving; yard work (raking and trimming bushes); house work (laundry and dishes); cooking; shopping; washing the car; going

---

[5] On January 7, 2013, Dr. Wade noted, "[t]he ulcers on his feet have healed." (Doc. 8 at 702). As noted previously, Plaintiff's diabetic foot ulcers worsened *after* the date last insured, resulting in amputation of several of Plaintiff's toes.

12

out to eat; going to concerts, festivals, sporting events, Mardi Gras, and Mardi Gras balls; travelling; exercising (walking up to one mile a day, four or five times a week); taking care of his own personal needs; and managing his own finances. (Id. at 78, 90, 97-99, 103-04, 228-30, 751, 1288).

Although Plaintiff argues that "[t]he ALJ failed to account . . . for Plaintiff's acknowledgement that he sometimes sugarcoated reports to his doctors," (Doc. 9 at 4), the ALJ's decision reflects that he expressly considered Plaintiff's testimony, as well as the medical records related to each of his impairments, when limiting Plaintiff's RFC to a reduced range of sedentary work. (Id. at 27, 32). While there is no question that Plaintiff had degenerative changes of the back (for which he underwent successful laminectomy surgery in 2009) and that he has been diagnosed with cardiomyopathy, congestive heart failure, diabetes, neuropathy, and hypertension, which have caused him to experience symptoms such as fatigue, shortness of breath, and foot ulcers, Plaintiff's treatment records, overall, reflect conservative treatment of these conditions, with adequate control of symptoms and largely normal physical examination findings. Indeed, as the ALJ found, the record fails to show any significant physical limitations resulting from any of these conditions during the period in question.

Based on the foregoing, the Court finds that the substantial evidence supports the ALJ's determination that Plaintiff has the

RFC to perform a range of sedentary work, with the stated restrictions. Plaintiff has failed to show that any limitations caused by his impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions. Accordingly, Plaintiff's claim must fail.[6]

**VII. Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED**.

**DONE** this **21st** day of **March, 2019**.

                                            **/s/ SONJA F. BIVINS**
                                      **UNITED STATES MAGISTRATE JUDGE**

---

[6] Although Plaintiff has cited evidence in the record which he claims supports a finding that he is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").